COURT OF CHANCERY
OF THE
STATE OF DELAWARE

KIM E. AYVAZIAN
MASTER IN CHANCERY

CHANCERY COURTHOUSE
34 The Circle
GEORGETOWN, DELAWARE 19947
AND
LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19980-3734

March 2, 2017

Andrea C. Beck
260 Golden Plover Drive
Smyrna, DE 19977

Brian Thomas McNelis, Esquire
Young & McNelis
300 South State Street
Dover, DE 19901

RE:  *Andrea C. Beck v. John Greim and Bombay Woods Maintenance Corp.*
     C.A. No. 10223-MA

Dear Ms. Beck and Counsel:

On July 22, 2016,[1] Vice-Chancellor Montgomery-Reeves issued a Letter Opinion and Order addressing Plaintiff Andrea Beck's exceptions to my Final Report dated February 22, 2016.[2]  The Vice-Chancellor denied in part and granted in part Beck's exceptions.  Specifically, the Vice-Chancellor agreed with my conclusion that Beck's purported corporate mismanagement or misconduct claims against Defendant John A. Greim and anyone else on behalf of Defendant Bombay Woods Maintenance Corporation (hereinafter "Bombay Woods") are derivative

---

[1] Docket Items ("DI") 94 & 95.

claims and that Beck must be represented by counsel to pursue them. The Vice-Chancellor also agreed with my conclusion that Beck's claims of harassment and threatening behavior by Greim fell outside the subject matter jurisdiction of this Court. However, to the extent that Beck is challenging her removal as director and treasurer from the Board of Directors of Bombay Woods, the Vice-Chancellor disagreed with my recommendation and ruled instead that Beck may proceed *pro se* in pursuing an action under 8 *Del. C.* § 225. The Vice-Chancellor then remanded for my initial determination the issue of whether Beck's claims regarding the alleged failure by Greim to maintain the community's common interest areas are derivative claims or whether these claims may be pursued by Beck *pro se* under 10 *Del. C.* § 348.

On October 10, 2016,[3] I issued a draft report following the Vice-Chancellor's remand order. In the draft report, I concluded that Beck's complaint does not set forth a valid Section 348 claim because she is not seeking enforcement of the subdivision's deed restrictions. Instead, Beck's complaint recites Greim's alleged failure to enforce the architectural review process and to maintain the common interest areas as further examples of Greim's misconduct and mismanagement of the corporation. Therefore, I concluded that these allegations were also derivative claims.

---

[2] DI 71.

Beck has taken exception to my draft report. Her opening and reply briefs, however, are mostly incomprehensible.[4] They do not contain legal argument, but instead are couched in the form of numerous questions to the Court.[5] They are also replete with irrelevant information. Nothing in Beck's briefs persuades me to alter my previous conclusions and recommendations. As recited in Beck's prayer for relief, Beck is seeking an order:

a. Awarding Petitioners' cost and immediate recovery of this hearing filing fees and expenses of $400.00, plus

b. Resolve-Reimbursement of the loss of 2013 and 2014 Bombay Woods Maintenance Corporation's forecasted annual dues in the amount of $42,636. Due to failure to collect funds (so voted and approved budgets by the members of the corporation) and due to unauthorized possession and disbursement of community funds.

c. Further recognition: Out of the $42,636., 33% of delinquent dues at 18% annually ($14,069.88 x 18%) totaling $2532.57, and monthly interest (non-compounding interest) of 10% ($1,406.98 for 12 months), totaling $16,883.86 with a final total of $62052.44, as so delegated by the deed restrictions. (**Exhibit 17**) Restrictions: Page 7 paragraph C)

---

[3] DI 103.

[4] DI 107 & 109.

[5] One of Beck's questions is: why did I not consider Vice Chancellor Parsons' decision in *Adams v. Calvarese Farms Maintenance Corporation, Inc.*, 2010 WL 3640819 (Del. Ch. Sept. 17, 2010)? The short answer is that Beck previously had not cited the *Adams* case in her briefs. Even if she had, the issue whether the plaintiff in *Adams* could proceed *pro se* with her derivative claims was never addressed by Vice Chancellor Parsons. In this case, Vice Chancellor Montgomery-Reeves has already ruled that Beck cannot proceed *pro se* with her purported corporate mismanagement or misconduct claims against Greim or anyone else on behalf of the corporation.

d. Court filing fees; March 3, 2014, in the amount of $40., with an additional time lost of 2 hours at $45 per hour totaling $90. August 19, 2014. $15.00.

e. Out of pocket expenses unpaid by corporation of $166.75, (postage, certified mail and office supplies per letter dated, March 7, 2014, (**Exhibit 21**).

f. The cost of printing Community letter dated June 21, 2014, (2 sided, 153 count. $97.28, (**Exhibit 22**).

g. All legal fees incurred by Respondent and Respondent's Appointees, (excluding Corporation's members). Per Restriction document "if acted in good faith". Mr. Greim repeatedly was made aware of Delaware Laws and given numerous opportunities to correct the situation but chose to ignore. The Appointees had a responsibility to guide Mr. Greim to obey laws and the corporation's mandating documents. (**Exhibit 17**) Restrictions: Page 3, Item 5, Paragraph 3.

h. All above items to be paid by Respondent and Appointees excluding the Corporation's Members.

i. Return all accounting and corporation records.

j. Immediate removal of current officers due to misconduct.

k. Deny Respondent's and Appointee's eligibility to fill future positions within this corporation until the successful completion of adult leadership and community building courses.

l. Respondent ordered to write a letter of apology to the community for the confusion and loss of trust an any other actions or remedies that this honorable court deems helpful for the restoration of the comminutes' [sic] confidence to promote future participation and funding.

m. Allow Petitioner continued service as Director of Bombay Woods Maintenance Corporation through the ended term in 2015 and through the natural election process.[6]

Nowhere in her prayer for relief does Beck seek enforcement of the architectural review process or improvements to the upkeep of the community's common interest areas (*e.g.,* the landscaping, jogging path, and storm water

---

[6] Petitioner's "Complaint: Cease and Desist." DI 1.

retention ponds).   Therefore, I am adopting my draft report as my final report, as modified herein, and recommending that the Court dismiss Beck's so-called Section 348 count with prejudice.  The parties are referred to Court of Chancery Rule 144 for the process of taking exception to a Master's Final Report.

Respectfully,

/s/ Kim E. Ayvazian
Kim E. Ayvazian
Master in Chancery

KEA/kekz